MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: SEETHA RAMACHANDRAN (SR-0886)
Assistant United States Attorney
1 Saint Andrews Plaza, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2546
Facsimile:  (212) 637-0421



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x
                                 :
UNITED STATES OF AMERICA,        :
                                 :
            Plaintiff,           :
                                 :
    v.                           :
                                 :
PETER CASTELLANETA and QUEENS LONG :
ISLAND MEDICAL GROUP, P.C.,      :
                                 :
            Defendants.          :
                                 :
- - - - - - - - - - - - - - - - -x

        Plaintiff, United States of America ("the United

States" or "the Government"), by and through its attorney,

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its complaint herein alleges upon

information and belief as follows:

                      INTRODUCTION

        1.  This is an interpleader action brought by the

United States to return seized funds to its rightful owner or

owners.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1335 and 1345, and Rule 22 of the Federal Rules of Civil Procedure.  The value of the property held by the United States exceeds $500.00.

3.  Venue is proper pursuant to 28 U.S.C. § 1391(b), in that the property is located within the jurisdiction of the Southern District of New York.

## THE PROPERTY

4.  The property that is the subject of this action ("Property") consists of the following:

a. Approximately $595,000 in United States currency, including any and all United States currency funds or other monetary instruments credited to:

(1)  approximately $12,736.08 in account number █████2232 in the name of Traditional Personnel Services, located at Roslyn Savings Bank;

(2)  approximately $1.00 in account number █████2216 in the name of Stafford Personnel Group, located at Roslyn Savings Bank;

(3)  approximately $446,086.75 in account number █████50-66 in the name of Stafford Personnel Group Inc. d/b/a Traditional

2

Personnel Services, located at JP Morgan
Chase;

(4)    approximately $18,322.58 in account number
███████50-65 in the name of Stafford
Personnel Group Inc. d/b/a Traditional
Personnel Services, located at JP Morgan
Chase;

(5)    approximately $2,568.68 in account number
███████40-66 in the name of Curtis Gatz,
located at JP Morgan Chase;

(6)    approximately $29,912.34 in account number
███████40-65 in the name of Curtis Gatz,
located at JP Morgan Chase;

(7)    approximately $29,978.49 in account number
██████4555 in the name of Peter Castellano,
located at JP Morgan Chase; and

(8)    approximately $1.00 in account number  ██████
██2221 in the name of Peter Castellano,
located at JP Morgan Chase;

5.    The Property is in the possession of the United
States in the custody of the Federal Bureau of Investigation
("FBI").

## THE PARTIES

6.    The United States is a sovereign and body politic.

3

7. Defendant Peter Castellaneta.

8. Defendant Queens Long Island Medical Group, P.C.

FACTS

9. On or about July 21, 2006, the Government seized the Property pursuant to a seizure warrant, attached as Exhibit 1.

10. On or about August 14, 2006, Peter Castellaneta and Curtis Gatz were charged in Superseding Indictment S1 06 Cr. 684 (GEL) (the "Indictment"), attached as Exhibit 2, with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 (Count One), and mail fraud in violation of 18 U.S.C. § 1341 and 2 (Count Two). The Indictment listed the Property in a forfeiture allegation, as proceeds traceable to the mail fraud offenses charged in Counts One and Two of the Indictment.

11. On or about February 20, 2007, a jury trial against Peter Castellaneta and Curtis Gatz, on Indictment S1 06 Cr. 684 (GEL), began before the Honorable Gerard E. Lynch.

12. Peter Castellaneta and Curtis Gatz were acquitted at trial. Following the trial, on or about March 7, 2007, the Court entered a Judgment of Acquittal for Peter Castellaneta and Curtis Gatz.

13. On or about July 13, 2007, defendant Peter Castellaneta filed a Petition for Release of Seized Property (the "Petition") in United States v. Castalleneta, S1 06 Cr. 684

4

(GEL).  The Petition seeks release of the following three bank accounts, two of which were among the Property that the Government seized on July 21, 2006[1]:

      a.    Approximately $30,568.49 in account number ████ ████4555 at JP Morgan Chase Bank in the name of Peter Castellaneta;

      b.    Approximately $446,085.75 in account number ████ ██2221 at JP Morgan Chase Bank in the name of Peter Castellaneta; and

      c.    Approximately $1500.00 in account number ████ ██7745-65 at JP Morgan Chase Bank in the names of Peter Castellaneta and Denise Lamonica.

    14.  On or about Agust 16, 2007, defendant Queens Long Island Medical Group, P.C., filed a lawsuit in New York State Supreme Court, New York County, against Peter Castellaneta, Curtis Gatz, and others, seeking approximately $600,000 in damages resulting from the same fraudulent scheme alleged in the Government's criminal case against Castellaneta and Gatz.

    15.  On or about August 24, 2007, defendant Queens Long Island Medical Group, P.C. filed a Cross-Motion to Intervene as a

---

[1] Although the account names and approximate dollar amounts vary slightly from those that the Government seized, the account numbers set forth in Paragraph 13 (a) and (b), above, make clear that Castellaneta seeks release of the some of the same bank accounts.  The third bank account, set forth in Paragraph (c), was never seized by the Government.

Defendant and for a Temporary Restraining Order Against the
United States of America, Restraining the Release of the Seized
Property and in Opposition to Peter Castellaneta's Petition for
Release of Seized Property ("Cross-Motion to Intervene"), in
United States v. Peter Castellaneta, S1 06 Cr. 684 (GEL).

16.   The Property was retained in the custody of the
United States and has remained in the custody of the United
States to date.

17.   Both defendants, Peter Castellaneta and Queens
Long Island Medical Group, P.C., claim an interest in the
Property.

18.   By virtue of the above claims, the United States
may be exposed to multiple liability.

19.   The United States claims no beneficial interest in
the Property.

WHEREFORE, plaintiff, United States, demands judgment:

(a) ordering defendants to interplead their respective
claims to the Property;

(b) declaring which of the defendants is entitled to
the Property, or some portion thereof;

(c)   restraining each of the defendants from
instituting any action against the United States for the recovery
of the Property;

     (d)   relieving and discharging the United States, including any department, agent, office or employee of the United States, from liability with regard to the Property; and

     (e) dismissing the Government from this action.


Dated:     New York, New York
             August 29, 2007

                          MICHAEL J. GARCIA
                          United States Attorney for the
                          Southern District of New York
                          Attorney for the United States
                          of America

By:   _____
                          SEETHA RAMACHANDRAN (SR-0886)
                          Assistant United States Attorney
                          1 Saint Andrew's Plaza
                          New York, New York  10007
                          Telephone: (212) 637-2546
                          Facsimile: (212) 637-0421

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA          :

         Plaintiff,               :

             - v -          :          SEALED AFFIDAVIT IN
                          SUPPORT OF SEIZURE
                          WARRANT PURSUANT TO
                 :          18 U.S.C. §§ 981 AND 984

ANY AND ALL FUNDS IN ACCOUNT      :
NO. ▮▮▮▮▮2232, IN THE NAME
OF TRADITIONAL PERSONNEL SERVICES, :
HELD AT ROSLYN SAVINGS BANK, OR
ANY ACCOUNT(S) TO WHICH SAID       :
CONTENTS HAVE BEEN TRANSFERRED,
                          :

ANY AND ALL FUNDS IN ACCOUNT
NO. ▮▮▮▮▮2216, IN THE NAME       :
OF STAFFORD PERSONNEL GROUP,
HELD AT ROSLYN SAVINGS BANK, OR    :
ANY ACCOUNT(S) TO WHICH SAID
CONTENTS HAVE BEEN TRANSFERRED,    :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ▮▮▮▮▮50-66, IN THE NAME
OF STAFFORD PERSONNEL GROUP INC.   :
DBA TRADITIONAL PERSONNEL SERVICES,
HELD AT JP MORGAN CHASE, OR        :
ANY ACCOUNT(S) TO WHICH SAID
CONTENTS HAVE BEEN TRANSFERRED,    :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ▮▮▮▮▮50-65, IN THE NAME
OF STAFFORD PERSONNEL GROUP INC.   :
DBA TRADITIONAL PERSONNEL SERVICES,
HELD AT JP MORGAN CHASE, OR        :
ANY ACCOUNT(S) TO WHICH SAID
CONTENTS HAVE BEEN TRANSFERRED,    :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ▮▮▮▮▮40-66, IN THE NAME
OF CURTIS GATZ, HELD AT
JP MORGAN CHASE, OR ANY ACCOUNT(S) :
TO WHICH SAID CONTENTS HAVE BEEN
TRANSFERRED,                       :

                          :
ANY AND ALL FUNDS IN ACCOUNT

NO. ████████40-65, IN THE NAME    :
OF CURTIS GATZ,HELD AT
JP MORGAN CHASE, OR ANY ACCOUNT(S) :
TO WHICH SAID CONTENTS HAVE BEEN
TRANSFERRED,                        :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ████████47-65, IN THE NAME
OF DENISE LAMONICA, HELD AT        :
JP MORGAN CHASE, OR ANY ACCOUNT(S)
TO WHICH SAID CONTENTS HAVE BEEN   :
TRANSFERRED,
                                   :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ████████47-01, IN THE NAME
OF DENISE LAMONICA, HELD AT        :
JP MORGAN CHASE, OR ANY ACCOUNT(S) :
TO WHICH SAID CONTENTS HAVE BEEN
TRANSFERRED,                        :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ██████4555, IN THE NAME
OF PETER CASTELLANO, HELD AT       :
JP MORGAN CHASE, OR ANY ACCOUNT(S)
TO WHICH SAID CONTENTS HAVE BEEN   :
TRANSFERRED,
                                   :

ANY AND ALL FUNDS IN ACCOUNT       :
NO. ██████2221, IN THE NAME
OF PETER CASTELLANO, HELD AT       :
JP MORGAN CHASE, OR ANY ACCOUNT(S) :
TO WHICH SAID CONTENTS HAVE BEEN
TRANSFERRED,                        :

                Defendants-in-rem.  :

----------------------------------x

STATE OF NEW YORK            )
COUNTY OF NEW YORK           ) ss:
SOUTHERN DISTRICT OF NEW YORK )

        KEVIN IRWIN, being duly sworn, deposes and says:

    1.   I am a Special Agent with the Federal Bureau of

Investigation ("FBI"). I have been a Special Agent with the FBI

for nine years.  I am presently assigned to a squad that

specializes in the investigation and prosecution of, among other

things, financial fraud and money laundering offenses, and I have

received specialized training in the investigation of financial

fraud and money laundering crimes.  I am familiar with the facts

and circumstances set forth below from my personal participation

in the investigation, review of documents and other materials,

and conversations with other law enforcement officers and others.

Where the actions, statements, and conversations of others are

recounted herein, they are related in substance and in part,

unless otherwise indicated.  Because this affidavit is for the

limited purpose of establishing probable cause for a seizure

warrant, it does not set forth every fact learned in the course

of this investigation.

　　　　2.    This affidavit is submitted in support of the

Government's application for the issuance of warrants to seize

and forfeit the following:

> ANY AND ALL FUNDS IN ACCOUNT NO. ███████2232, IN THE NAME OF
> TRADITIONAL PERSONNEL SERVICES, HELD AT ROSLYN SAVINGS BANK,
> OR ANY ACCOUNT(S) TO WHICH SAID CONTENTS HAVE BEEN
> TRANSFERRED;

> ANY AND ALL FUNDS IN ACCOUNT NO. ███████2216, IN THE NAME OF
> STAFFORD PERSONNEL GROUP, HELD AT ROSLYN SAVINGS BANK, OR
> ANY ACCOUNT(S) TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

> ANY AND ALL FUNDS IN ACCOUNT NO. ███████50-66, IN THE NAME
> OF STAFFORD PERSONNEL GROUP INC. DBA TRADITIONAL PERSONNEL
> SERVICES, HELD AT JP MORGAN CHASE, OR ANY ACCOUNT(S) TO

3

WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████50-65, IN THE NAME
OF STAFFORD PERSONNEL GROUP INC. DBA TRADITIONAL PERSONNEL
SERVICES, HELD AT JP MORGAN CHASE, OR ANY ACCOUNT(S) TO
WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████40-66, IN THE NAME
OF CURTIS GATZ, HELD AT JP MORGAN CHASE, OR ANY ACCOUNT(S)
TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████40-65, IN THE NAME
OF CURTIS GATZ, HELD AT JP MORGAN CHASE, OR ANY ACCOUNT(S)
TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████47-65, IN THE NAME
OF DENISE LAMONICA, HELD AT JP MORGAN CHASE, OR ANY
ACCOUNT(S) TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████47-01, IN THE NAME
OF DENISE LAMONICA, HELD AT JP MORGAN CHASE, OR ANY
ACCOUNT(S) TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████4555, IN THE NAME OF
PETER CASTELLANO, HELD AT JP MORGAN CHASE, OR ANY ACCOUNT(S)
TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

ANY AND ALL FUNDS IN ACCOUNT NO. ████2221, IN THE NAME OF
PETER CASTELLANO, HELD AT JP MORGAN CHASE, OR ANY ACCOUNT(S)
TO WHICH SAID CONTENTS HAVE BEEN TRANSFERRED;

(collectively, the "Defendant Accounts"). As set forth below,

there is probable cause to believe that the contents of the

Defendant Accounts constitute property constituting and derived

from proceeds of a fraudulent scheme, in violation of 18 U.S.C. §

1341, and property traceable to such property; and property

involved in actual or attempted money laundering transactions, or

property traceable to such property, in violation of 18 U.S.C. §§

1956 and 1957, and are thus subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C).

3.    As set forth in the Criminal Complaint in this matter (the "Complaint," attached hereto as Exhibit A; the contents of which are fully incorporated herein by reference)[1], other FBI agents and I have been investigating defendants Denise Lamonica ("LAMONICA"), Curtis Gatz ("GATZ"), and Peter Castellaneta ("CASTELLANETA") for engaging in a fraudulent scheme whereby they submitted false and fraudulent invoice statements for payment by the Queens Long Island Medical Group, PC, ("QLIMG") in violation of 18 U.S.C. § 1341.

4.    On May 16, 2006, LAMONICA, GATZ, and CASTELLANETA were arrested and presented in this District before United States Magistrate Judge James C. Francis.    LAMONICA, GATZ, and CASTELLANETA were each released under the following bail conditions:

a.    LAMONICA was released on a $250,000 personal recognizance bond cosigned by three financially responsible persons, surrender of all travel documents and no new

---

[1]    Upon my subsequent review of bank records, I discovered an error in Paragraph 10.a of the Complaint, which has been corrected in Paragraphs 9.a and 9.b of this Affidavit.    The Complaint stated that several checks payable to Denise Lamonica were deposited into an account in the names of Denise Lamonica and Peter Castellaneta, when in fact checks in the name of Denise Lamonica were deposited into accounts in the name of Denise Lamonica, and additional checks in the name of Peter Castellaneta were deposited into accounts in the name of Peter Castellano.

applications, travel restricted to the Southern and Eastern Districts of New York, and regular pretrial supervision;

   b. CASTELLANETA was released on a $250,000 personal recognizance bond, secured by his residence, cosigned by one financially responsible person, surrender of all travel documents and no new applications, travel restricted to the Southern and Eastern Districts of New York, and regular pretrial supervision; and

   c. GATZ was released on a $250,000 personal recognizance bond, secured by his residence, cosigned by one financially responsible person, surrender of all travel documents and no new applications, travel restricted to the Southern and Eastern Districts of New York, and regular pretrial supervision.

### Overview of Fraudulent Scheme

   5. As described below and in the Complaint, LAMONICA was employed by QLIMG from March 2003 through June 2005, as a Human Resource Manager, and later, as the Director of Human Resources.  In these capacities, LAMONICA was responsible for choosing staffing agencies to provide temporary staff for QLMIG. LAMONICA was also responsible for initial approval of invoices submitted by such staffing agencies for payment by QLMIG. LAMONICA approved staffing agency invoices by initialing them and passing them on for review by her supervisor, who then returned

them to LAMONICA, who in turn sent them to accounts payable to prepare checks for signature by QLIMG's CEO. After a check was signed, it was then mailed to the address listed on the corresponding invoice.

6.  As described in greater detail in the attached Complaint, LAMONICA submitted at least 221 fraudulent invoices bearing the names of two entities – "Stafford Personnel Group" and "Traditional Personnel Services." My investigation later revealed that these two entities did not perform any services reflected in the fraudulent invoices. In fact, these two entities were owned and controlled by GATZ and CASTELLANETA.

7.  As set forth in the Complaint, QLIMG issued checks totaling $595,000 to Stafford Personnel Group and Traditional Personnel Services, as payment for the 221 fraudulent invoices. I reviewed copies of these canceled checks.

7

## The Defendant Bank Accounts

8.   During the course of my investigation, I used copies of the canceled checks provided by QLIMG, and paid to Stafford Personnel Group and Traditional Personnel Services, to identify four bank accounts, two at Roslyn Savings Bank (the "Roslyn Account") and two at JP Morgan Chase (the "JPMC Accounts), into which the checks had been deposited.  From my review of bank records associated with the Defendant Accounts, and my interviews with bank representatives about these Defendant Accounts, I have learned the following:

a.   the Roslyn Accounts were opened in October 2003 in the names of "Traditional Personnel Services" and "Stafford Personnel Group," respectively, by "Curtis Gatz," with Gatz listed as "vice president" of each entity;

b.   the JPMC Accounts were each opened in May 2004 in the name of "Stafford Personnel Group Inc dba Traditional Personnel Services," by "Curtis Gatz" and "Peter Castellano," with Gatz listed as "Vice President" and Castellano listed as "President";

c.   from in or about October 2003 until in or about October 2005, a total of at least $595,000 was deposited into these four accounts, virtually all of which consists of the payments from QLIMG described above;

d.   there have not been any substantial deposits into these four accounts since the payments from QLIMG ceased following the termination of DENISE LAMONICA, the defendant;

e.   from at least in or about December 2003 until in or about February 2006, approximately three-quarters of the funds deposited into these four accounts were paid out in checks payable to "Denise Lamonica," "Curtis Gatz" or "Peter

8

Castellaneta," and much of the remainder was paid to credit card or vehicle lease accounts.

9.   I have also reviewed bank account records for additional accounts at JP Morgan Chase into which checks payable to "Denise Lamonica," "Curtis Gatz," and "Peter Castellaneta" were deposited ("the "Personal JPMC Accounts"), as described above in paragraph 8.e. above, and have learned the following:

a.   several checks payable to "Denise Lamonica" were deposited into accounts in the name of "Denise Lamonica" at JP Morgan Chase (Account Nos. ████ 47-65 and ████ 47-01) for which the account opening information includes a signature that appears to be the same as that which DENISE LAMONICA, the defendant, used on documents I have reviewed from QLIMG;

b.   several checks payable to "Peter Castellaneta," were deposited into accounts in the name of "Peter Castellano" at JP Morgan Chase (Account Nos. ████ 4555 and ████ 2221) for which the account opening information includes a signature card in the name of "Peter Castellaneta."

c.   the checks payable to "Curtis Gatz" were deposited into accounts in the name of "Curtis Gatz" at JP Morgan Chase (Account Nos. ████ 40-66 and ████ 40-65) for which the account opening information includes the same date of birth and address as that which CURTIS GATZ, the defendant, used to open the mailbox to which fraudulently obtained payments from QLIMG were mailed ;

d.   many of the checks paid to "Lamonica," "Gatz" and "Castellaneta" appear to be signed by "Castellaneta," and these signatures appear to match the signature of "Peter Castellaneta" on a New York State driver's license that I obtained from the New York Department of Motor Vehicles.

10.   During the course of my interviews of QLIMG employees, several employees stated, in substance and in part,

that DENISE LAMONICA and PETER CASTELLANETA, a/k/a "Peter

Castellano," the defendants, lived together in a romantic

relationship.  I have reviewed documents from QLIMG in which

LAMONICA listed "Peter Castellano" as an emergency contact, as

well as documents in which LAMONICA listed the same address as

that on "Castellaneta"'s driver's license, as described in

paragraph 9.d. above.

## Statutory Authority

11.  The statutory provisions pursuant to which the

contents of the Defendant Accounts are subject to seizure and

forfeiture are described below.

12.  Title 18, United States Code, Section 981(a)(1)(C)

subjects to forfeiture:

> "[a]ny property, real or personal, which
> constitutes or is derived from proceeds traceable
> to . . . any offense constituting 'specific
> unlawful activity' (as defined in section
> 1956(c)(7) of this title), or a conspiracy to
> commit such offense."

13.  18 U.S.C. § 1956(c)(7)(A) provides that the term

"specified unlawful activity" includes "any act or activity

constituting an offense listed in section 1961(1) of this title".

Section 1961(1) includes "section 1341 (relating to mail fraud)."

14.  By reason of the above, the defendant-in-rem funds

are subject to forfeiture to the United States of America

pursuant to 18 U.S.C. §§ 981(a)(1)(C), because there is probable

cause to believe that the defendant-in-rem funds constitute property derived from a fraudulent scheme to file false and fraudulent invoice statements for payment by the Queens Long Island Medical Group, PC, in violation of 18 U.S.C. § 1341, and property traceable to such property.

15. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture ."[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of . . . section 1956 or 1957 of this title [relating to money laundering], or any property traceable to such property."

16. Title 18, United States Code, Section 1956 provides, in pertinent part, that

> (a)(1)  Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity --
>
> (A) with the intent to promote the carrying on of specified unlawful activity; or
>
> (B) knowing that the transaction is designed in whole or in part -- (i) to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity

shall be guilty of a crime.

17. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and includes any offense listed under 18 U.S.C. § 1961(1). Section 1961(1), in turn, lists as an offense

11

"any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud)."

18.   18 U.S.C. § 1957 provides in relevant part that:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

19.   "Monetary transactions" is defined in 18 U.S.C. § 1957(f)(1) as the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce of funds . . . by, through, or to a financial institution . . . including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title . . . ."

20.   "Criminally derived property" is defined in 18 U.S.C. § 1957(f)(2) as "any property constituting, or derived from, proceeds obtained from a criminal offense."

21.   "Specified unlawful activity" is defined in 18 U.S.C. § 1957(f)(3) as having the same meaning as that term has in 18 U.S.C. § 1956.

22.   By reason of the above, the contents of the Defendant Accounts are subject to forfeiture to the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(A), because there is probable cause to believe that the defendant-in-rem funds

12

constitute property involved in money laundering in violation of

18 U.S.C. §§ 1956 and 1957, and property traceable to such

property.

23.   Title 18, United States Code, Section 984 provides

in relevant part that:

> (a)(1) In any forfeiture action in rem in which
> the subject property is cash, monetary instruments
> in bearer form, funds deposited in an account in a
> financial institution (as defined in section 20 of
> this title), or precious metals –
>
> > (A) it shall not be necessary for
> > the Government to identify the
> > specific property involved in the
> > offense that is the basis for the
> > forfeiture; and
> >
> > (B) it shall not be a defense that
> > the property involved in such an
> > offense has been removed and
> > replaced by identical property.
>
> (2) Except as provided in subsection
> (b), any identical property found in the
> same place or account as the property
> involved in the offense that is the
> basis for the forfeiture shall be
> subject to forfeiture under this
> section.
>
> (b) No action pursuant to this section
> to forfeit property not traceable
> directly to the offense that is the
> basis for the forfeiture may be
> commenced more than 1 year from the date
> of the offense.

24.   By reason of the above, the contents of the

Defendant Accounts are subject to forfeiture to the United States

of America pursuant to 18 U.S.C. § 984, because there is probable

cause to believe that these funds constitute proceeds of mail fraud and property involved in money laundering that were deposited into the Defendant Accounts within the past year.

25. Title 18, United States Code, Section 981(b)(2) provides that the Secretary of Treasury may seize property subject to forfeiture under 18 U.S.C. § 981(a)(1) when the Secretary "has obtained a warrant for such seizure pursuant to the Federal Rules of Criminal Procedure."

26. Accordingly, there is probable cause to believe that the contents of the Defendant Accounts are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A), (C) and § 984.

27. For the reasons set forth above, I respectfully request that the Court issue seizure warrants pursuant to 18 U.S.C. § 981(b) for the contents of the Defendant Accounts, and for any accounts to which said contents may have been transferred. In addition, as indicated above, due to the nature of the illegal scheme, it is likely that illegal proceeds may be in the process of being credited to the Defendant Accounts when the warrant is served. The Government would therefore request that the Court order the bank to freeze the account to prevent any funds from being transferred, withdrawn or removed, but to continue to allow credits to the account for a period of seven (7) days, up to and including July 28, 2006.

14

28.   I also respectfully request that this Affidavit be sealed until further order of the Court, so as not to jeopardize the investigation of this case.

Kevin Irwin
Special Agent
Federal Bureau of Investigation

Sworn to before me this
21st day of July, 2006:

HONORABLE THEODORE H. KATZ
United States Magistrate Judge
Southern District of New York

15

# EXHIBIT A

Approved: _____    **06 MAG    0654**
        MARSHALL A. CAMP
        Assistant United States Attorney

Before:   HON. ANDREW J. PECK
        Chief United States Magistrate Judge
        Southern District of New York

- - - - - - - - - - - - - - - - -x
                      :
UNITED STATES OF AMERICA     :    <u>COMPLAINT</u>
                      :
        -v.-         :    Violation of
                      :    18 U.S.C. §§ 1341, 2
                      :
DENISE LAMONICA,          :
CURTIS GATZ,             :    COUNTY OF OFFENSE:
PETER CASTELLANETA,      :    NEW YORK
   a/k/a "Peter Castellano," :
                      :
          Defendants.   :
                      :
- - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      KEVIN IRWIN, being duly sworn, deposes and says that he
is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

<u>COUNT ONE</u>

      From in or about May 2003, through in or about
February 2006, in the Southern District of New York and
elsewhere, DENISE LAMONICA, CURTIS GATZ, and PETER CASTELLANETA,
a/k/a "Peter Castellano," the defendants, unlawfully, wilfully
and knowingly, having devised and intending to devise a scheme
and artifice to defraud, and for obtaining property by means of
false and fraudulent pretenses, representations and promises, for
the purpose of executing such scheme and artifice and attempting
so to do, placed in a post office and authorized depository for
mail matter, matters and things to be sent and delivered by the
Postal Service, and deposited and caused to be deposited matters
and things to be sent and delivered by private and commercial
interstate carriers, and took and received therefrom, and
knowingly caused to be delivered by mail and such carriers,
according to the direction thereon, such matters and things, to
wit, LAMONICA, GATZ and CASTELLANETA caused to be used the United
States mail in furtherance of a scheme in which they submitted
false and fraudulent invoice statements for payment by the Queens

Long Island Medical Group, PC.

(Title 18, United States Code, Section 1341 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

1.    I am a Special Agent with the FBI.  I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that have been learned during the course of the investigation.  Where the contents of conversations of others are reported herein, they are reported in substance and part.

2.    During the course of this investigation, I have interviewed several employees of Queens Long Island Medical Group, PC ("QLIMG").  These employees indicated in substance and in part, among other things, that:

a.    QLIMG is a professional corporation that owns and operates 22 medical centers located in Queens and Long Island, New York.

b.    DENISE LAMONICA, the defendant, was hired by QLIMG in or about March 2003 to serve as Human Resource Manager.  LAMONICA's title was later changed to Director of Human Resources.

c.    In those capacities, LAMONICA was responsible for choosing staffing agencies to provide temporary staff employed at QLIMG's various medical centers.  LAMONICA was also responsible for the initial approval of invoices submitted by such staffing agencies for payment by QLIMG.

d.    LAMONICA approved staffing agency invoices by initialing them and passing them on for review by LAMONICA's supervisor ("Supervisor-1").  Supervisor-1 then approved invoices and returned them to LAMONICA, who in turn sent them to accounts payable to prepare checks for signature by QLIMG's CEO.  After a check

2

was signed, it was then mailed to the address
listed on the corresponding invoice.

e.   LAMONICA was terminated by QLIMG in June
     2005.

3.   During the course of my investigation, I have
interviewed auditors retained by QLIMG to conduct an internal
investigation related to the matters described in this complaint.
The auditors advised me that they interviewed Supervisor-1, who
stated in substance and in part that his review of invoices,
including those initially approved by DENISE LAMONICA, the
defendant, was typically superficial, and that LAMONICA's initial
approval of an invoice was generally sufficient to obtain his
approval.

4.   Among the QLIMG employees whom I interviewed
during the course of my investigation was an employee ("Employee-
1") who stated, in substance and in part, the following:

a.   On or about December 19, 2005, Employee-1 was
     given a stack of unpaid invoices and asked to
     determine whether the invoices could be
     approved for payment.

b.   The invoices reviewed by Employee-1 had been
     received in November 2005 from a company
     listed on the invoices as "Stafford Personnel
     Group" ("Stafford"). The outstanding
     Stafford invoices totaled approximately
     $73,000 and reflected temporary staffing
     services purportedly rendered at various
     QLIMG medical centers.

c.   In order to verify the outstanding Stafford
     invoices, Employee-1 contacted administrators
     at each of the relevant medical centers to
     confirm that corresponding temporary staffing
     services were performed by Stafford temps on
     the days listed on the invoices.

d.   In response to Employee-1's contacts, each
     medical center administrator stated that the
     corresponding center had not requested or
     employed a temporary employee on the day
     listed as stated in the invoice. Several
     administrators also stated that they had
     never heard of Stafford.

e.   On or about January 3, 2006, Employee-1

received a call from an individual identifying himself as "Curtis Gatz." Gatz stated that he represented Stafford, and Employee-1 asked Gatz to provide the names of the temporary employees who had worked each day listed in the invoices. Gatz did not provide the requested information.

5.    During the course of my investigation, I have reviewed copies of documents provided by the QLIMG to their internal auditors, including the following:

a.    approximately 221 invoices dated from May 2003 through July 2005 and submitted by either Stafford or "Traditional Personnel Group" ("Traditional"), about which I have observed and learned the following:

(1)    almost all of the invoices bear the initials "DL," which employees described in paragraph 2 above identified as those of DENISE LAMONICA, the defendant; and

(2)    the invoices for Stafford and Traditional reflect two mailing addresses, both in Manhattan, New York; and

b.    canceled checks reflecting payments to Stafford and Traditional totaling approximately $595,000 and reflecting payment of all or substantially all the 221 invoices described above.

6.    During the course of my investigation, I randomly selected several of the invoices described in paragraph 5.a. above and contacted the administrators of the corresponding QLIMG medical centers for which temporary staffing services were purportedly provided by Stafford or Traditional. In each case, the administrator stated that there were no records of the temporary services reflected in the invoices. Several QLIMG employees whom I interviewed, including all of the administrators with whom I spoke, stated that they had never heard of either Stafford or Traditional except in connection with the invoices submitted by DENISE LAMONICA, the defendant.

7.    During the course of my investigation, I visited the two Manhattan, New York mailing addresses listed on the

4

Stafford and Traditional invoices ("Address-1" and "Address-2"). Address-1 is a rental mailbox. I have reviewed records provided by the company that owns the mailbox rental service and have learned that the box was opened by CURTIS GATZ, the defendant, in the name of "Stafford Personel Group." Among the documents I reviewed were copies of GATZ's driver's license and credit card. I visited Address-2 and observed that it is now a children's clothing and toy store. A representative of the mailbox company at Address-1 stated, in substance and in part, that Address-2 previously was occupied by a company providing mailbox rental services.

       8.    During the course of my investigation, I used the copies of the canceled checks provided by QLIMG, and paid to Stafford and Traditional, to identify four bank accounts, two at Roslyn Savings Bank (the "Roslyn Accounts") and two at JP Morgan Chase (the "JPMC Accounts"), into which the checks had been deposited. Based on a review of records provided by these banks, I have learned the following:

        a.    the Roslyn Accounts were opened in October 2003 in the names of "Traditional Personnel Services" and "Stafford Personnel Group," respectively, by "Curtis Gatz," with Gatz listed as "vice president" of each entity;

        b.    the JPMC Accounts were each opened in May 2004 in the name of "Stafford Personnel Group Inc dba Traditional Personnel Services," by "Curtis Gatz" and "Peter Castellano," with Gatz listed as "vice president" and Castellano listed as "president";

        c.    from in or about October 2003 until in or about October 2005, a total of at least $590,000 was deposited into these four accounts, virtually all of which consists of the payments from QLIMG described above;

        d.    there have not been any substantial deposits into these four accounts since the payments from QLIMG ceased following the termination of DENISE LAMONICA, the defendant;

        e.    from at least in or about December 2003 until in or about February 2006, approximately three-quarters of the funds deposited into these four accounts were paid out in checks

payable to "Denise Lamonica," "Curtis Gatz" or "Peter Castellaneta," and much of the remainder was paid to credit card or vehicle lease accounts.

9.    During the course of my investigation, I have reviewed copies of invoices that QLIMG provided to their internal auditors for various security services performed for QLIMG by "Safeway Security Systems." QLIMG employees whom I have interviewed stated that PETER CASTELLANETA, a/k/a "Peter Castellano," the defendant, visited the QLIMG premises on behalf of Safeway Security Systems and purported to be the company's operator. The Safeway Security Systems invoices appear to be virtually identical in format to many of the invoices submitted on behalf of Stafford.

10.    During the course of my investigation, I have reviewed bank account records for the accounts into which the checks payable to "Denise Lamonica," "Curtis Gatz," and "Peter Castellaneta" were deposited, as described in paragraph 8.e. above, and have learned the following:

        a.    several checks payable to "Denise Lamonica" were deposited into an account in the names of "Denise Lamonica" and "Peter Castellaneta," for which the account opening information lists Lamonica's employer as QLIMG and includes a signature that appears to be the same as that which DENISE LAMONICA, the defendant, used on documents ·I have reviewed from QLIMG;

        b.    the checks payable to "Curtis Gatz" were deposited into an account in the name of "Curtis Gatz" for which the account opening information includes the same date of birth and address as that which CURTIS GATZ, the defendant, used to open the mailbox at Address-1;

        c.    many of the checks paid to "Lamonica," "Gatz" and "Castellaneta" appear to be signed by "Castellaneta," and these signatures appear to match the signature of "Peter Castellaneta" on a New York State driver's license that I obtained from the New York Department of Motor Vehicles.

6

11.    During the course of my interviews of QLIMG employees, several employees stated, in substance and in part, that DENISE LAMONICA and PETER CASTELLANETA, a/k/a "Peter Castellano," the defendants, lived together in a romantic relationship.  I have reviewed documents from QLIMG in which LAMONICA listed "Peter Castellano" as an emergency contact, as well as documents in which LAMONICA listed the same address as that on "Castellaneta"'s driver's license, as described in paragraph 10.c. above.

WHEREFORE, deponent prays that warrants issue for the arrests of DENISE LAMONICA, CURTIS GATZ, and PETER CASTELLANETA, a/k/a "Peter Castellano," the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

KEVIN IRWIN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
10th day of May, 2006

HONORABLE ANDREW J. PECK
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :      INDICTMENT
                              :
            - v. -            :
                              :      S1 06 Cr. 684 (GEL)
PETER CASTELLANETA,           :
   a/k/a Peter Castellano, and :
CURTIS GATZ,                  :
                              :
            Defendants.       :
                              :
- - - - - - - - - - - - - - - - x



COUNT ONE

        The Grand Jury charges:

        1.  From in or about August 2003 through in or about
February 2006, in the Southern District of New York and
elsewhere, PETER CASTELLANETA, a/k/a "Peter Castellano," and
CURTIS GATZ, the defendants, and others known and unknown,
unlawfully, willfully, and knowingly, did combine, conspire,
confederate, and agree together and with each other to commit an
offense against the United States, to wit, to violate Section
1341 of Title 18, United States Code.

        2.  It was a part and an object of the conspiracy that
PETER CASTELLANETA, a/k/a "Peter Castellano," and CURTIS GATZ,
the defendants, and others known and unknown, unlawfully,
willfully, and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations and promises, for the purpose of executing such

scheme and artifice and attempting to do so, would and did place
in a post office and authorized depository for mail matter, a
matter and thing to be sent and delivered by the Postal Service,
and deposited and caused to be deposited a matter and thing to be
sent and delivered by a private and commercial interstate
carrier, and took and received therefrom, such matter and thing,
and knowingly caused to be delivered by mail and such carrier
according to the direction thereon and at a place at which it is
directed to be delivered by the person to whom it is addressed,
any such matter and thing, in violation of Section 1341 of Title
18, United States Code.

OVERT ACTS

3.   In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt acts, among others,
were committed in the Southern District of New York and
elsewhere:

a.   On or about May 11, 2004, PETER CASTELLANETA,
a/k/a "Peter Castellano," and CURTIS GATZ, the defendants, each
signed a Business Signature Card in connection with a JPMorgan
Chase Bank account in the name of "Stafford Personnel Group Inc."
d/b/a "Traditional Personnel Services."

b.   On or about September 29, 2004, in Manhattan,
New York, CURTIS GATZ, the defendant, prepared and signed an
Application for Delivery of Mail Through Agent in connection with

a rental mailbox, in the name of "Stafford Personal Group,"
located in Manhattan, New York.

(Title 18, United States Code, Section 1349.)

COUNT TWO

The Grand Jury further charges:

4.     From in or about May 2003 through in or about
February 2006, in the Southern District of New York and
elsewhere, PETER CASTELLANETA, a/k/a "Peter Castellano," and
CURTIS GATZ, the defendants, unlawfully, willfully and knowingly,
having devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, for the
purpose of executing such scheme and artifice and attempting to
do so, placed in a post office and authorized depository for mail
matter, a matter or thing to be sent and delivered by the Postal
Service, and deposited and caused to be deposited a matter and
thing to be sent and delivered by a private and commercial
interstate carrier, and took and received therefrom, such matter
and thing, and knowingly caused to be delivered by mail and such
carrier according to the direction thereon and at a place at
which it is directed to be delivered by the person to whom it is
addressed, any such matter and thing, to wit, CASTELLANETA and
GATZ operated a sham corporation for which false and fraudulent
invoices were submitted to the Queens Long Island Medical Group,

P.C. ("QLIMG") for payment by mail, and obtained from the mails payments made by the QLIMG in response to such invoices.

(Title 18, United States Code, Sections 1341 and 2.)

### FORFEITURE ALLEGATION

5.    As the result of committing the offenses of mail fraud and conspiracy to commit mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1349, as alleged in Counts One and Two of this Indictment, PETER CASTELLANETA, a/k/a "Peter Castellano," and CURTIS GATZ, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to the following:

a.    Approximately $595,000 in United States currency, in that such sum constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offenses of mail fraud and conspiracy to commit mail fraud, for which the defendants are jointly and severally liable, including but not limited to any and all United States currency funds or other monetary instruments credited to:

(1)    account number ▮▮▮▮2232 in the name of Traditional Personnel Services, located at Roslyn Savings Bank;

(2)   account number ▮▮▮▮▮2216 in the name
      of Stafford Personnel Group, located at
      Roslyn Savings Bank;

(3)   account number ▮▮▮▮▮50-66 in the name
      of Stafford Personnel Group Inc. d/b/a
      Traditional Personnel Services, located
      at JP Morgan Chase;

(4)   account number ▮▮▮▮▮50-65 in the name
      of Stafford Personnel Group Inc. d/b/a
      Traditional Personnel Services, located
      at JP Morgan Chase;

(5)   account number ▮▮▮▮▮40-66 in the
      name of Curtis Gatz, located at JP
      Morgan Chase;

(6)   account number ▮▮▮▮▮40-65 in the
      name of Curtis Gatz, located at JP
      Morgan Chase;

(7)   account number ▮▮▮▮▮47-65 in the name
      of Denise Lamonica, located at JP Morgan
      Chase;

(8)   account number ▮▮▮▮▮47-01 in the name
      of Denise Lamonica, located at JP Morgan
      Chase;

(9)    account number ████4555 in the name of
        Peter Castellano, located at JP Morgan
        Chase;

(10)   account number ████2221 in the name of
        Peter Castellano, located at JP Morgan
        Chase;

### Substitute Asset Provision

b.    If the above-described forfeitable property,
as a result of any act or omission of the defendants:

(1)    cannot be located upon the exercise of
        due diligence;

(2)    has been transferred or sold to, or
        deposited with, a third person;

(3)    has been placed beyond the jurisdiction
        of the Court;

(4)    has been substantially diminished in
        value; or

(5)    has been commingled with other property
        which cannot be subdivided without
        difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

    (Title 18, United States Code, Section 981, Title 28, United States Code, Section 2461, and Title 18, United States Code, Sections 1341 and 1349).


_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

PETER CASTELLANETA,
a/k/a Peter Castellano, and
CURTIS GATZ,

Defendants.

## INDICTMENT

S1 06 Cr. 684 (GEL)

(18 U.S.C. §§ 1341, 1349, and 2.)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

*Judith Corbin*

Foreperson.

*8/14/06 - Fld. Superseding Indictment.
S 06 Cr. 684 (GEL).*

*Eaton, J. U.S.M.J.*