UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

UNITED STATES OF AMERICA,                                    Action No. 06 CR 684 (GEL)

       Plaintiff,

- against -

PETER CASTELLANETA and CURTIS GATZ,

       Defendants.
------------------------------------------------------------------x
UNITED STATES OF AMERICA,                                    Action No. 07 Civ 7694 (GEL)

       Plaintiff,

- against -

PETER CASTELLANETA and QUEENS LONG
ISLAND MEDICAL GROUP, P.C.,

       Defendants.
------------------------------------------------------------------x

**MEMORANDUM OF LAW OF QUEENS LONG ISLAND MEDICAL GROUP, P.C.
IN OPPOSITION TO DEFENDANT PETER CASTELLANETA'S
MOTION TO DISMISS AND RECONSIDER**

SILVERSON, PARERES & LOMBARDI, LLP
Rachel H. Poritz, Esq. (RP-7320)
Joseph T. Pareres, Esq. (JP-3316)
*Attorneys for* QUEENS LONG ISLAND MEDICAL GROUP, P.C.
300 East 42nd Street
New York, New York 10017
T. (212) 557-1818
F. (212) 557-1336

## PRELIMINARY STATEMENT

1) QUEENS LONG ISLAND MEDICAL GROUP, P.C. (hereinafter "QLIMG" and "Queens Long Island Medical Group"), by its attorneys Silverson Pareres & Lombardi, respectfully submits this Memorandum of Law in Opposition to the motion of defendant Peter Castellaneta to dismiss the government's interpleader complaint, or in the alternative for This Court to reconsider its interpleader order of September 4, 2007, and to vacate the stay and direct the return of Mr. Castellaneta's funds.

2) For the reasons set forth herein, QLIMG opposes this motion and requests that This Court uphold its order and that Mr. Castellaneta's funds remain in the deposit of the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure.

## BACKGROUND

3) The seized property at issue is approximately $600,000.00, which was fraudulently obtained from QLIMG by the defendants in this action Peter Castellaneta and Curtis Gatz, and by Denise Lamonica, who pled guilty on September 11, 2006.

4) Denise Lamonica, in her guilty plea (Index No. 06 CR 678 [LBS]), admitted in Court that between May 2003 and February 2006, she fraudulently billed Queens Long Island Medical Group and collected monies from QLIMG in the amount of approximately $600,000.00. (Plea[1], T. at 11). Ms. Lamonica did not dispute the Government's charge that Ms. Lamonica "and others knowingly and intentionally caused false and fraudulent temporary staffing and permanent placement invoices to be submitted to the employer", resulting in QLIMG paying out a total of $595,485.88 in checks to the defendants. (Plea, T. at 13; Trial Transcript[2], at 829). While

---

[1] All references to the "Plea Transcript" are from the criminal case against Denise Lamonica, Index No. 06 CR 678.
[2] All references to the Trial Transcript are from the criminal trial, Index No. 06 CR 684.

approximately $122,897.78 was paid directly to Ms. Lamonica, the remaining monies were paid out to Peter Castellaneta and Curtis Gatz.

5) At trial, defendants Peter Castellaneta and Curtis Gatz admitted that they obtained at least $120,000.00 each as a result of billing QLIMG, and that their companies, Stafford Personnel Group Inc. and Traditional Personnel Services[3], grossed approximately $590,000.00 as a result of billing QLIMG, their only customer. (Trial Transcript, at 829, 1321-22).

6) Mr. Castellaneta testified at trial that as one of the owners of Stafford and with respect to Ms. Lamonica's confession to the fraudulent billing: "I knew I was accountable for the money. I understood that at that point." (Trial Transcript, at 778). He further testified: "If a company I owned obtained money fraudulently from Queens Long Island Medical Center, then they were entitled to get their money back." (Trial Transcript, at 787). Why Mr. Castellaneta is now asking for This Court to return these stolen funds to him is unclear.

7) Irrespective of whether they knew that they were committing fraud on QLIMG or not, and whether they committed fraud through the mail, is irrelevant to the fact that Peter Castellaneta, Curtis Gatz, Denise Lamonica, Stafford Personnel Group, and Traditional Personnel Services wrongly obtained approximately $590,000.00 belonging to QLIMG. The property seized by the Government in this criminal action represents the monies wrongly taken by these three individuals from QLIMG.

8) A civil action in Supreme Court, New York County (Index No.111252/07), has been commenced by QLIMG against Peter Castellaneta, Curtis Gatz, Denise Lamonica, Stafford Personnel Group, and Traditional Personnel Services. This civil lawsuit sounds in fraud,

---

[3] According to the trial testimony, Stafford Personnel Group Inc. was doing business as Traditional Personnel Services. (Trial Transcript, at 1039-40).

misrepresentation, conversion, and unjust enrichment, and essentially seeks the return of the monies fraudulently obtained from QLIMG.

## **ARGUMENT**

### **THIS COUT'S ORDER IS PROPER AND NECESSARY TO PRECENT IRREPARABLE HARM TO QLIMG**

9) This Court properly considered defendant Castellaneta's motion for release of the seized funds, the cross-motion of QLIMG seeking leave to intervene and for an Order restraining the release of the seized pending resolution of the civil action commenced against them, and the Government's filing of an interpleader. As Your Honor noted in the September 4, 2007 decision,

> The Court is thoroughly familiar with the facts of these cases, and so there is no need for further briefing or evidence-gathering with respect to the government's application, which is clearly meritorious. Castellaneta and QLIMG both claim they are entitled to the funds in the government's possession. Their claims arise from circumstance that could not be more closely related: Castellaneta contends the funds were seized in connection with false allegations of fraud, and QLIMG claims that the accusations of fraud – although not proven beyond a reasonable doubt – are true, and that it is entitled to recover those funds as a consequence of the fraud.

10) As Your Honor presided over the criminal trial of this matter, Your Honor was and is fully familiar with the facts and circumstances concerning the underlying motion at issue. The issues presented are straightforward and pertain to issues addressed in the criminal trial.

11) Mr. Castellaneta was an officer of the corporations that allegedly fraudulently stole almost $600,000 from QLIMG. Mr. Castellaneta has admitted that he fraudulently obtained money from QLIMG through his corporations. As part of the criminal investigation and trial against him, the government properly seized monies from Mr. Castellaneta. Following the criminal trial, QLIMG commenced a civil action seeking the return of the money fraudulently obtained by Mr. Castellaneta and others from QLIMG. In an attempt to protect its valid and

legitimate interests QLIMG moved as an intervening party, requesting that Your Honor deny Mr. Castellaneta's petition for return of the funds and place the money with the Clerk of the Court pending resolution of the civil action.

12)    It is respectfully submitted that Mr. Castellaneta has failed to establish that he is entitled to a return of the seized funds.

### AS AN OFFICER OF THE CORPORATION THAT DEFRAUDED QLIMG, DEFENDANT CASTELLANETA IS LIABLE FOR ALL OF THE STOLEN MONIES

13)    Defendant Castellaneta, as an officer[4] of the Stafford Personnel Group and Traditional Personnel Services, which wrongly obtained approximately $590,000.00 belonging to QLIMG, is potentially jointly and severally liable in the civil lawsuit. The civil lawsuit commenced by QLIMG in Supreme Court, New York County, sounds in fraud, misrepresentation, conversion, and unjust enrichment.

14)    New York State Courts have held joint tortfeasors jointly and severally liable for the plaintiff's damages, regardless of the degree of each defendant's participation or culpability in the overall scheme, and notwithstanding the amount of any direct benefit conferred upon them through a fraudulent transaction. See e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Arcturus Builders Inc., 159 A.D.2d 283, 552 N.Y.S.2d 287 (1st Dept. 1990); American Transit Ins. Co. v. Faison, 242 A.D.2d 201, 201, 661 N.Y.S.2d 624, 625 (1st Dept. 1997); City of New York v. Lead Indus. Ass'n, Inc., 190 A.D.2d 173, 597 N.Y.S.2d 698 (1st Dept. 1993).

15)    Furthermore, it is well-settled that a corporate officer or agent is "personally liable for their own acts which bring about a conversion of a third party's property, and it is no defense to personal liability that the officer or agent may have been acting on behalf of a corporate principal." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Arcturus Builders Inc., 159 A.D.2d 283, 552

---

[4] Mr. Castellaneta testified at trial that he and Mr. Gatz were the officers of the corporation. (Trial Transcript, at 872).

N.Y.S.2d 287 (1st Dept. 1990); Ingram v. Machel & Jr. Auto Repair, 148 A.D.2d 324, 325, 538 N.Y.S.2d 539 (1st Dept. 1989), *appeal dismissed*, 74 N.Y.2d 792, 545 N.Y.S.2d 106 (1989).

16) In the instant case, where Mr. Castellaneta entered into a joint venture (Stafford Personnel Group and Traditional Personnel Services) with Curtis Gatz and Denise Lamonica, they are each "joint tortfeasors because their acts contributed to the damage and it is not possible to determine in what proportion each contributed." Reger v. National Ass'n of Bedding Mfrs. Group Ins. Trust Fund, 83 Misc.2d 527, 372 N.Y.S.2d 97 Sup. Ct. 1975)(internal citations omitted). As such, in New York, "defendants' liability remains joint and several." Id.; see Prosser, 'Joint Torts & Several Liability', 25 Calif.L.Rev. 413, 435-39 (1936); Harper & James, Law of Torts (1956 ed.) §§10.1-10.2).

17) The government seized from Mr. Castellaneta approximately $476,654.24 from his bank accounts. While counsel for QLIMG has requested that the attorneys for defendants Castellaneta and Gatz provide us with copies of the bank account statements for Stafford Personnel Group and Traditional Personnel Services, the requests were denied. Accordingly, defendant QLIMG is unable at this time to determine the specific path of the funds stolen from QLIMG.

18) Notably, there was testimony at trial that besides the money paid directly to the defendants from the corporations, checks were written out of the corporate accounts for "other expenses" such as ski vacations and car payments. (Trial Transcript, at 864-66, 874, 926-27, 1182). Defendant Gatz testified as follows when questioned by Your Honor:

> THE COURT: As far as you were concerned, **what sort of things would you charge to the business or would you feel was appropriate for your partners to charge to the business**?
> THE WITNESS: Well, as far as my partners, like I said, I didn't know about anything. We give it to the accountant and he would decide what would be appropriate.
> THE COURT: I am not talking about the taxes. I am trying to understand what the practice was since you were writing the checks. If Mr. Castellaneta said, I

> took a trip, here is the envelope with receipts, write me a check, is there anything that you would have thought -- under what circumstances would you say fine, here's the check?
> THE WITNESS: **I guess there were some things that were outrageous that had nothing to do with the business totally**.
> THE COURT: Generally speaking, if he said it was related to the business –
> THE WITNESS: If it was related to business and he thought it was appropriate to do it, yeah.
> THE COURT: Then you would write the check?
> THE WITNESS: I would sign the check. A lot of times he would write the checks. Sometimes Denise would write the checks and I would be the signer.
> THE COURT: I got it.

(Trial Transcript, at 1181-82, emphasis added).

19) At the very least, defendant Castellaneta is responsible for $120,000.00, which he admitted at trial that he personally obtained from the fraud perpetuated against QLIMG. (Trial Transcript, at 829, 1321-22). However, the evidence at trial indicates that the financial records will establish that Mr. Castellaneta is responsible for more than the admitted $120,000.00. Moreover, defendant Castellaneta is potentially liable for the entire amount stole from QLIMG according to New York State Law, as he and his partners had a joint venture for profit through which they wrongly obtained almost $600,000.00 from QLIMG.

20) Absent an opportunity to obtain the financial documentation in the civil action (as defendants have refused to voluntarily provide this information and motion practice may be required), QLIMG cannot prove the specific amount that defendant Castellaneta personally and fraudulently obtained from QLIMG. Nevertheless, as noted above, defendant Castellaneta is potentially liable for the entire amount fraudulently stolen, as he was an officer of Stafford Personnel Group Inc., doing business as Traditional Personnel Services.

21) While it is respectfully requested that the Clerk of the Court retain the entire amount of the seized funds, at the very least, $120,000.00 should not be returned, unless defendant Castellaneta agrees to pay $120,000.00 to QLIMG as partial restitution. In any event, QLIMG will

seek the total amount of fraudulently obtained funds from defendant Castellaneta in the civil action.

## **DEFENDANT CASTELLANETA HAS FAILED TO ESTABLISH THAT HE HAS AMPLE ASSETS TO SATISFY A CIVIL JUDGMENT AGAINST HIM**

22) While defendant Castellaneta claims that he has ample assets to "easily satisfy" a judgment against him in the civil action, it is respectfully submitted that defendant has failed to establish that this is true.

23) In his Affirmation, Peter Castellaneta states that the monies seized represents savings accumulated over 25 years. However, there is no evidence to support this statement. The bank account statements attached to the moving papers simply document the status of the bank accounts as of August and September 2006, following the fraud perpetuated against QLIMG.

24) As This Court will recall, the alleged fraud against QLIMG occurred between May 2003 and February 2006. Mr. Castellaneta has failed to provide any documentation regarding his savings prior to May 2003. As such, all of the funds in his bank accounts are potentially the proceeds of the wrongdoing against QLIMG.

25) Additionally, while Mr. Castellaneta claims that the monies in his bank accounts are not the same monies as those against which QLIMG has a claim, there is no evidence provided to support that claim. As noted above, absent an opportunity to obtain the corporate financial documentation, QLIMG is unable to prove the specific path of the funds that Mr. Castellaneta (as well as Curtis Gatz and Denise Lamonica) fraudulently obtained from QLIMG.

26) While Mr. Castellaneta claims that his home in Richmond County is valued in excess of $1 million with a mortgage balance of $162,000, and that he has a valuable business, there is no proof of these assets.

27) It is respectfully submitted that there is a legal basis for This Court to affirm its Order for the Clerk of the Court to retain the seized funds pending resolution of the civil action in New York State Supreme Court, and defendant Castellaneta has failed to prove otherwise.

### THE DENIAL OF DEFENDANT CASTELLANETA'S APPLICATION AND AN INJUNCTION OR RESTRAINING ORDER IS NECESSARY TO PROTECT THE INTERESTS OF QLIMG AND PREVENT IRREPARABLE HARM

28) If This Court permits the release of the seized property in accordance with the renewed application of defendant Castellaneta, this will irreparably harm QLIMG and both impair and impede QLIMG's ability to recover the funds which were admittedly fraudulently stolen from them. It is essential to note that while defendant Castellaneta was acquitted in this criminal action, the charges were for mail fraud, not for the fraudulent theft of property from QLIMG. As such, the civil rights of QLIMG are not protected in this action and QLIMG must be permitted to intervene to protect its interests and rights with respect to the stolen property (approximately $590,000.00).

29) If the seized property is released and defendant Castellaneta (or anyone else) is permitted to withdraw the funds from the various bank accounts in which the funds are located, QLIMG's ability to secure the return of the stolen funds through civil litigation will be impaired and impeded, resulting in irreparable harm and prejudice to QLIMG, the victim in this case.

### CONCLUSION

30) For all of the reasons set forth herein, it is respectfully requested that This Court deny the motion of defendant Castellaneta to dismiss the government's interpleader complaint and direct the return of Mr. Castellaneta's funds. It is respectfully requested that the Clerk of the Court

retain defendant Castellaneta's funds pending resolution of the New York State Supreme Court action.

Dated: New York, New York
     October 12, 2007

                                      Respectfully submitted:

                                      SILVERSON, PARERES & LOMBARDI, LLP

                                      _____
                                      Rachel H. Poritz, Esq. (RP-7320)
                                      Joseph T. Pareres, Esq. (JP-3316)
                                      *Attorneys for QUEENS LONG ISLAND MEDICAL GROUP, P.C.*
                                      300 East 42nd Street
                                      New York, New York 10017
                                      T. (212) 557-1818
                                      F. (212) 557-1336