UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
UNITED STATES OF AMERICA,

               Plaintiff,                             Action No. 07 Civ 7694 (GEL)

   - against -


PETER CASTELLANETA and QUEENS LONG
ISLAND MEDICAL GROUP, P.C.,

              Defendants.
-------------------------------------------------------------------------x


**MEMORANDUM OF LAW OF QUEENS LONG ISLAND MEDICAL GROUP, P.C.
IN OPPOSITION TO DEFENDANT PETER CASTELLANETA'S MOTION TO DISMISS**

---

                                        SILVERSON, PARERES & LOMBARDI, LLP
                                        Rachel H. Poritz, Esq. (RP-7320)
                                        Joseph T. Pareres, Esq. (JP-3316)
                                        *Attorneys for QUEENS LONG ISLAND MEDICAL GROUP, P.C.*
                                        300 East 42nd Street
                                        New York, New York 10017
                                        T. (212) 557-1818
                                        F. (212) 557-1336

## PRELIMINARY STATEMENT

1) QUEENS LONG ISLAND MEDICAL GROUP, P.C. (hereinafter "QLIMG" and "Queens Long Island Medical Group"), by its attorneys Silverson Pareres & Lombardi, LLP, respectfully submits this Memorandum of Law in Opposition to the motion of defendant Peter Castellaneta to dismiss the government's interpleader complaint and to vacate the stay and direct the return of Mr. Castellaneta's seized funds.

2) For the reasons set forth herein, as well as the papers submitted to This Court on the prior motions addressing this issue, QLIMG opposes this motion and requests that This Court uphold its order and that Mr. Castellaneta's funds remain in the deposit of the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure.

## BACKGROUND

3) As This Court is well aware, the seized property at issue is approximately $600,000.00, which was fraudulently obtained from QLIMG by Peter Castellaneta and Curtis Gatz, and by Denise Lamonica, who pled guilty on September 11, 2006. The fraudulent actions of these individuals, personally and as the owners and shareholders of Stafford Personnel Group, Inc., and Traditional Personnel Services, form the basis of QLIMG's civil action in Supreme Court, New York County, Index Number 111252/07.

4) On January 24, 2008, Hon. Michael D. Stallman in New York State Supreme Court heard oral argument on defendant Castellaneta's motion to dismiss the complaint filed by QLIMG. A Preliminary Conference was also held on that date setting forth a discovery schedule. A copy of the Preliminary Conference Order is attached hereto as EXHIBIT "A".

5) With respect to Castellaneta's motion, Justice Stallman directed QLIMG to amend the complaint to add the fraudulent invoices submitted to QLIMG by the defendants seeking

payment for employment and staffing services at QLIMG's medical facilities, services which were never provided by defendants to QLIMG, and which defendants never intended to provide.

6)    In accordance with the Court's ruling, QLIMG drafted and timely served a Second Amended Complaint[1] listing the individual fraudulent invoices at issue as well as the checks issued by QLIMG to defendants as payment for those invoices. The Second Amended Complaint was served by the undersigned yesterday, February 12, 2008, upon the defendants' attorneys by overnight mail. Copies of the invoices and checks are attached to the Amended Complaint and have likewise been served upon the defendants.[2]

7)    At trial, defendants Peter Castellaneta and Curtis Gatz admitted that they each obtained at least $120,000.00 as a result of billing QLIMG, and that their companies, Stafford Personnel Group Inc. and Traditional Personnel Services[3], grossed approximately $590,000.00 as a result of billing QLIMG, their only customer. (Trial Transcript, at 829, 1321-22).

8)    While Mr. Castellaneta claims in his Affirmation (which is actually an Affidavit), attached to his current motion to dismiss, that he has not admitted that he fraudulently obtained money from QLIMG through his corporations, his trial testimony speaks for itself. Mr. Castellaneta testified at trial that as one of the owners of Stafford and with respect to Ms. Lamonica's confession to the fraudulent billing: "I knew I was accountable for the money. I understood that at that point." (Trial Transcript, at 778). He further testified: "If a company I owned obtained money fraudulently from Queens Long Island Medical Center, then they were

---

[1] An Amended Complaint was served as part of QLIMG's opposition papers and did not list all of the invoices, hence the need for a Second Amended Complaint, listing all of the invoices and checks.
[2] The reason why the Amended Complaint has not been attached to the instant papers is that the Complaint itself is 95 pages and there are at least 200 pages attached to the Complaint with copies of the invoices and checks at issue. Counsel for QLIMG would be happy to provide This Court with a copy of the Amended Complaint.
[3] According to the trial testimony, Stafford Personnel Group Inc. was doing business as Traditional Personnel Services. (Trial Transcript, at 1039-40).

entitled to get their money back." (Trial Transcript, at 787). All that QLIMG seeks, by intervening in the Federal Court and by commencing a State Court action, is its money back!

9) The criminal trial testimony was that in addition to the $120,000.00, which Mr. Castellaneta admitted that he personally obtained from the fraud perpetuated against QLIMG (Trial Transcript, at 829, 1321-22), checks were written out of the corporate accounts for "other expenses" such as ski vacations and car payments. (Trial Transcript, at 864-66, 874, 926-27, 1182). Defendant Gatz testified as follows when questioned by Your Honor:

> THE COURT: As far as you were concerned, **what sort of things would you charge to the business or would you feel was appropriate for your partners to charge to the business**?
> THE WITNESS: Well, as far as my partners, like I said, I didn't know about anything. We give it to the accountant and he would decide what would be appropriate.
> THE COURT: I am not talking about the taxes. I am trying to understand what the practice was since you were writing the checks. **If Mr. Castellaneta said, I took a trip, here is the envelope with receipts, write me a check, is there anything that you would have thought -- under what circumstances would you say fine, here's the check?**
> THE WITNESS: **I guess there were some things that were outrageous that had nothing to do with the business totally.**
> THE COURT: Generally speaking, if he said it was related to the business –
> THE WITNESS: If it was related to business and he thought it was appropriate to do it, yeah.
> THE COURT: Then you would write the check?
> THE WITNESS: I would sign the check. **A lot of times he would write the checks.** Sometimes Denise would write the checks and I would be the signer.
> THE COURT: I got it.

(Trial Transcript, at 1181-82, emphasis added).

10) The evidence indicates that Mr. Castellaneta is responsible for more than the admitted $120,000.00. Moreover, defendant Castellaneta is potentially liable for the entire amount stole from QLIMG according to New York State Law, as he and his partners had a joint venture for profit through which they conspired to defraud QLIMG and as a result wrongly obtained $595,485.88 from QLIMG.

11) Mr. Castellaneta and the companies of which he was an owner and shareholder (Stafford Personnel Group and Traditional Personnel Services) wrongly obtained $595,485.88 belonging to QLIMG, and the property seized by the Government in this criminal action represents the monies wrongly taken by these three individuals from QLIMG. For Mr. Castellaneta to claim that the money seized is not the "actual" funds is ridiculous, particularly where there is testimony that the defendants, Mr. Castellaneta included, used the funds wrongly obtained from QLIMG for expenses such as vacations and personal expenses.

12) Of note, Paragraph 230 of the Amended Complaint reads as follows:

> Plaintiff QLIMG is entitled to the funds deposited with the Clerk of the Court in the United States District Court, Southern District of New York pursuant to the Decision and Order of Honorable Gerard E. Lynch dated September 4, 2007, as the funds are the funds wrongfully taken from QLIMG and converted by defendants.

13) Therefore, QLIMG does have a specific claim in the New York State Supreme Court action for the funds deposited with the Clerk according to Your Honor's September 4, 2007 Order.

14) In addition, on the issue of the release of the funds, Justice Stallman specifically advised counsel that while the parties have the right to make motions in the state court regarding the holding or release of the funds in the state court proceeding, there is evidence that may justify keeping the funds in the possession of the clerk

15) QLIMG has demanded the specific funds in the Court's possession, both orally and in writing. The undersigned and Joseph T. Pareres, Esq. have had telephone conferences with the attorneys representing the defendants and have demanded the return of the money wrongfully taken from QLIMG by the defendants, but the defendants have refused to return the money. This

demand is specifically noted in QLIMG's civil action Second Amended Complaint (as well as in the original complaint).

16) The only "improper" aspect of this case is that Mr. Castellaneta (as well as Mr. Gatz and Ms. Lamonica) profited from the fraud perpetuated against QLIMG and that QLIMG, as the victim, has been forced to defend its rights and seek to be made whole for what is now the third time on this very issue before This Honorable Court, as well as in a civil action in New York State Supreme Court.

17) In his motion, Mr. Castellaneta suggests that in order to obtain the money to satisfy a judgment against Mr. Castellaneta, QLIMG will be forced to go after his house or business. This simply adds another layer of prejudice against the victim, QLIMG.

18) Additionally, there is no evidence of illegal retention of funds by the Government.

## ARGUMENT

### DEFENDANT CASTELLANETA HAS FAILED TO PRESENT ANY NEW FACTS TO JUSTIFY DISTURBING THIS COURT'S PROPER ORDER REGARDING THE SEIZED FUNDS AT ISSUE

19) On the two prior motions addressing this exact issue, This Court properly considered defendant Castellaneta's arguments and ruled in the September 4, 2007 decision:

> The Court is thoroughly familiar with the facts of these cases, and so there is no need for further briefing or evidence-gathering with respect to the government's application, which is clearly meritorious. Castellaneta and QLIMG both claim they are entitled to the funds in the government's possession. Their claims arise from circumstance that could not be more closely related: Castellaneta contends the funds were seized in connection with false allegations of fraud, and QLIMG claims that the accusations of fraud – although not proven beyond a reasonable doubt – are true, and that it is entitled to recover those funds as a consequence of the fraud.

20) There are no new additional issues that have been raised in the instant motion that would require This Court to change its prior decision and ruling. Essentially, Mr. Castellaneta is

simply arguing that based upon the Preliminary Conference Order that the underlying civil action *may* not be concluded until the end of 2008 or beginning of 2009. There is no doubt that Your Honor, in issuing the original rulings to hold the seized funds, was aware of the potential time involved in a civil trial in New York State Supreme Court.

21) As set forth above and in the prior motion papers before Your Honor, Mr. Castellaneta was an officer of the corporations that allegedly fraudulently stole $595,485.88 from QLIMG. Mr. Castellaneta has admitted that he fraudulently obtained money from QLIMG through his corporations. As part of the criminal investigation and trial against him, the government properly seized monies from Mr. Castellaneta. Following the criminal trial, QLIMG commenced a civil action seeking the return of the money fraudulently obtained by Mr. Castellaneta and others from QLIMG. In an attempt to protect its valid and legitimate interests QLIMG moved as an intervening party, requesting that Your Honor deny Mr. Castellaneta's petition for return of the funds and place the money with the Clerk of the Court pending resolution of the civil action.

22) Mr. Castellaneta has failed to establish that he is entitled to a return of the seized funds. While it is respectfully requested that the Clerk of the Court retain the entire amount of the seized funds, at the very least, $120,000.00 should not be returned, unless defendant Castellaneta agrees to pay $120,000.00 to QLIMG as partial restitution. In any event, QLIMG will seek the total amount of the wrongly and fraudulently obtained funds from defendant Castellaneta in the civil action.

## DEFENDANT CASTELLANETA HAS FAILED TO
## JUSTIFY THE RELEASE OF THE SEIZED FUNDS

23)     While defendant Castellaneta claims that the monies in his bank accounts are not the same monies as those against which QLIMG has a claim, there is no evidence provided to support that claim.  The Federal trial testimony indicates that money was taken out of the companies and divided between Castellaneta, Gatz and Lamonica.  It is only logical that the money would end up in his personal bank accounts!  Upon information and belief, there is no money in any accounts for Stafford Personnel Group, Inc., and Traditional Personnel Services.

24)     Furthermore, as set forth above, it will only cause QLIMG more prejudice if QLIMG is forced to seek payment on a judgment through Mr. Castellaneta's house or business.  If the seized property is released and defendant Castellaneta is permitted to withdraw the funds from the various bank accounts in which the funds are located, QLIMG's ability to secure the return of the stolen funds through civil litigation will be impaired and impeded, resulting in irreparable harm and prejudice to QLIMG, the victim in this case.

25)     If This Court permits the release of the seized property in accordance with this third application of defendant Castellaneta, this will irreparably harm QLIMG and both impair and impede QLIMG's ability to recover the funds which were admittedly fraudulently stolen from them.

26)     It is respectfully submitted that there is a legal basis for This Court to affirm its prior Order for the Clerk of the Court to retain the seized funds pending resolution of the civil action in New York State Supreme Court, and defendant Castellaneta has failed to prove otherwise.

## CONCLUSION

27) For all of the reasons set forth herein, it is respectfully requested that This Court deny the motion of defendant Castellaneta to dismiss the government's interpleader complaint and direct the return of Mr. Castellaneta's funds. It is respectfully requested that the Clerk of the Court retain defendant Castellaneta's funds pending resolution of the New York State Supreme Court action.

Dated: New York, New York
       February 13, 2008

Respectfully submitted:

SILVERSON, PARERES & LOMBARDI, LLP

*[signature]*

Rachel H. Poritz, Esq. (RP-7320)
Joseph T. Pareres, Esq. (JP-3316)
*Attorneys for* QUEENS LONG ISLAND MEDICAL GROUP, P.C.
300 East 42nd Street
New York, New York 10017
T. (212) 557-1818
F. (212) 557-1336